STATE OF NORTH CAROLINA v. CRAIG RAYMOND KNOLL

No. 8610SC424

(Filed 3 February 1987)

1. **Arrest and Bail § 7; Automobiles and Other Vehicles § 125— driving while impaired—statutory right of access to counsel and friends**

In a prosecution for driving with a blood alcohol level of .10 or more, defendant was denied his statutory right of access to counsel and friends where the district court judge found that the magistrate failed to inform defendant of the general circumstances under which he could secure pretrial release as required by N.C.G.S. 15A-511(b) and failed to determine conditions of pretrial release in accordance with N.C.G.S. 15A-533(b) and 534(c).

2. **Arrest and Bail § 7— driving while impaired—denial of access to counsel and friends—prima facie prejudice rule inapplicable**

Application of a *per se* prejudice rule because of the statutory denial of access to counsel and friends is inappropriate in cases involving a violation of N.C.G.S. § 20-138.1(a)(2), driving with an alcohol concentration of .10 or more. Rather, a defendant must show that significant evidence helpful to his defense was lost as a result of the denial of his statutory right of access.

3. **Arrest and Bail § 7— driving while impaired—denial of access to friends and counsel—no prejudice**

There was no prejudice in a prosecution for driving with a blood alcohol level of .10 or more where defendant was denied his statutory right of access to counsel and friends but defendant's blood alcohol level was .30 and alone constituted sufficient evidence to convict defendant. The district court's application of the *per se* prejudice rule of State v. Hill, 277 N.C. 547, was not supported by findings indicating what, if any, evidence bearing on the issue of guilt or innocence was lost.

State v. Knoll

**4. Automobiles and Other Vehicles § 126.4— intoxilyzer test—right to second test**

In a prosecution for driving with a blood alcohol concentration of .10 or more, the evidence was inconclusive and inadequate to support the trial court's finding of fact that defendant was prejudiced when, after blowing a .30 on the first test, defendant asked "May I please take this test again?" and was told no. The uncontradicted evidence was that defendant was advised orally and in writing of his right to obtain a second test and it was not clear whether the officer's refusal to permit defendant to take the test again was a permissible denial of a request to have the State administer a second test or a denial of defendant's statutory right to have an independent test.

APPEAL by the State from *Farmer, Judge*. Order entered 19 February 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 17 September 1986.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*Crumpler & Scherer, by William B. Crumpler and Sally H. Scherer, for the defendant appellee.*

ORR, Judge.

Defendant, Craig Raymond Knoll, was charged with a violation of N.C.G.S. § 20-138.1, driving with an alcohol concentration of 0.10 or more. The district court dismissed the charge against defendant and the superior court affirmed the dismissal on the grounds that defendant was denied his constitutional and statutory rights of access to counsel and friends after being arrested.

This Court is faced with two issues for consideration. First, was there a substantial violation of defendant's constitutional and statutory right of access to counsel and friends. We hold that defendant's statutory right of access to counsel and friends was, in fact, substantially violated. The second issue to be determined is whether the trial court erred in dismissing the charge against defendant based upon a *per se* rule of prejudice. As to that contention, we hold that the trial court's ruling was in error.

Defendant was stopped by a Raleigh police officer at 1:15 p.m. on 17 April 1984 and was charged with driving while impaired. Defendant was taken to the Wake County Courthouse where, at approximately 2:31 p.m., he took the intoxilyzer test. The results showed defendant's alcohol concentration to be 0.30.

A magistrate set defendant's bond at $300.00. Around 4:00 p.m. defendant made several requests to phone his father. Defendant stated that he was allowed to call his father around 5:00 p.m. Defendant's father claimed that the magistrate told him over the phone that his son could not be released until 11:00 p.m. Defendant's father, therefore, did not come to the station immediately but did post bond for his son, sometime later that night.

## I.

[1]   There are three statutes that are applicable to the issue of whether there was a substantial violation of defendant's statutory right of access to counsel and friends. N.C.G.S. § 15A-511(b) states in part:

> (b) Statement by the Magistrate.—The magistrate must inform the defendant of:
>
> (1) The charges against him;
>
> (2) His right to communicate with counsel and friends; and
>
> (3) The general circumstances under which he may secure release under the provisions of Article 26, Bail.

N.C.G.S. § 15A-533(b) reads in applicable part:

> (b) A defendant charged with a noncapital offense must have conditions of pretrial release determined, in accordance with G.S. 15A-534.

N.C.G.S. § 15A-534(c) reads in pertinent part:

> (c) In determining which conditions of release to impose, the judicial official must, on the basis of available information, take into account the nature and circumstances of the offense charged; the weight of the evidence against the defendant; . . . whether the defendant is intoxicated to such a degree that he would be endangered by being released without supervision; . . . and any other evidence relevant to the issue of pretrial release.

The district court judge in the case *sub judice* found as a fact that the magistrate failed to inform defendant of the general cir-

cumstances under which he could secure pretrial release as required by N.C.G.S. § 15A-511(b) and failed to determine conditions of pretrial release in accordance with N.C.G.S. §§ 15A-533(b) and 534(c). The district court further found that, but for these statutory deprivations, defendant could have secured release from jail and access to friends and family.

Because the record is void of any evidence to the contrary, this Court is bound by those factual findings of the district court. *Fast v. Gulley*, 271 N.C. 208, 211, 155 S.E. 2d 507, 509 (1967) (findings of fact by the trial court which are supported by competent evidence are conclusive on appeal). This Court, therefore, finds that defendant was substantially deprived of his statutory rights as set forth above. Having found a substantial violation of defendant's statutory rights, we do not reach the question of whether a violation of his constitutional rights occurred.

## II.

[2] Next, we address the issue of whether the trial court erred in finding that defendant's case was irreparably prejudiced by the substantial deprivation of statutory rights and thus the only appropriate remedy was the dismissal of the charge against defendant. *See State v. Shadding*, 17 N.C. App. 279, 282-83, 194 S.E. 2d 55, 57, *cert. denied*, 283 N.C. 108, 194 S.E. 2d 636 (1973) (noting that failure to afford defendant remedy for a violation of N.C.G.S. § 20-16.2 would render the statute meaningless).

No case should be dismissed for the violation of a defendant's statutory rights unless, at the very least, these violations cause irreparable prejudice to the defendant's preparation of his case. *See State v. Curmon*, 295 N.C. 453, 457, 245 S.E. 2d 503, 505 (1978) ("A mere technical error will not entitle a defendant to a new trial; rather, it is necessary that the error be material and prejudicial.").

In regard to this second issue, the State contends that the district court erred in dismissing the charge against defendant because it applied the *per se* prejudice rule formulated in *State v. Hill*, 277 N.C. 547, 178 S.E. 2d 462 (1971). *Hill* involved a defendant charged with driving under the influence of an intoxicating liquor. The defendant had called his attorney who immediately went to the jail and arranged bond for him. After having posted

bond, the jailer refused to release Hill to the custody of his attorney.

Upon review by the Supreme Court of North Carolina, the majority in an opinion by Justice (later Chief Justice) Sharp, dismissed the prosecution against Hill and set forth the following rule:

> [T]he rule we now formulate will be uniformly applicable hereafter. It may well be that here "the criminal is to go free because the constable blundered." *People v. Defore*, 242 N.Y. 13, 21, 150 N.E. 585, 587. Notwithstanding, when an officer's blunder deprives a defendant of his only opportunity to obtain evidence which might prove his innocence, the State will not be heard to say that such evidence did not exist. *In Re Newbern*, 175 Cal. App. 2d 862, 1 Cal. Rptr. 80.

*State v. Hill*, 277 N.C. at 555, 178 S.E. 2d at 467.

Hill was prosecuted under N.C.G.S. § 20-138 (repealed 1983) for unlawfully operating a motor vehicle on a public street while under the influence of an intoxicating liquor. 1937 N.C. Sess. Laws ch. 407, § 101; 1971 N.C. Sess. Laws ch. 619, § 1; and 1973 N.C. Sess. Laws ch. 1081, § 1. Under that statute there was only one offense — driving under the influence.

> A person is under the influence within the meaning of G.S. 20-138 when he has drunk a sufficient amount of intoxicating beverage or taken a sufficient amount of narcotic drug to cause him to lose normal control of his bodily or mental faculties or both to such an extent that there is an appreciable impairment of either or both of these faculties. *State v. Ellis*, 261 N.C. 606, 135 S.E. 2d 584 (1964); *State v. Carroll*, 226 N.C. 237, 37 S.E. 2d 688 (1946).

*State v. Jenkins*, 21 N.C. App. 541, 543, 204 S.E. 2d 919, 921 (1974).

Prior to 1973, chemical analysis results could only establish an inference that the defendant was under the influence. *State v. Jenkins*, 21 N.C. App. 541, 204 S.E. 2d 919. The jury was free to acquit a defendant no matter what the results of the chemical analysis showed. *State v. Cooke*, 270 N.C. 644, 155 S.E. 2d 165 (1967). Likewise, the jury could convict without any chemical

analysis, based upon other evidence relating to the observed impairment of a defendant's physical or mental faculties.

Under N.C.G.S. § 20-138, it was therefore critical to the defense that the defendant immediately upon being charged be able to gather evidence that would potentially persuade a jury that his mental and physical faculties were, in fact, not appreciably impaired. In *Hill* the denial of access to counsel and friends was clearly prejudicial since it did, in fact, deprive the defendant of his only opportunity to obtain evidence which might prove his innocence. As the defendant's condition changed over time, the evidentiary value of access to counsel and friends evaporated.

In 1973 a new offense was created, driving with an alcohol concentration of 0.10 or more. 1973 N.C. Sess. Laws ch. 1081, § 1. This statute is codified as N.C.G.S. § 20-138.1(a)(2) and states in part that "[a] person commits the offense of impaired driving if . . . after having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more."

Because of the change in North Carolina's driving while intoxicated laws, denial of access is no longer inherently prejudicial to a defendant's ability to gather evidence in support of his innocence in every driving while impaired case. While denial of access was clearly prejudicial in *Hill*, under the current 0.10 statute, a defendant's only opportunity to obtain evidence is not lost automatically, when he is detained, and improperly denied access to friends and family. Prejudice may or may not occur since a chemical analysis result of 0.10 or more is sufficient, on its face, to convict.

It is certainly possible that a defendant might be prejudiced by a denial of access or unwarranted detention. Such prejudice could occur, for example, where a defendant was not advised of his right to have a second chemical test, *State v. Shadding*, 17 N.C. App. 279, 282-83, 194 S.E. 2d 55, 57, *cert. denied*, 283 N.C. 108, 194 S.E. 2d 636 (1973), or where his right to secure a second test was denied. *See State v. Fuller*, 24 N.C. App. 38, 42, 209 S.E. 2d 805, 808 (1974) (failure of the State to establish that defendant was accorded the right to obtain an additional test rendered State's breath analysis inadmissible). Prejudice might also occur,

for example, if pertinent evidence relating to contested elements of the offense, such as whether the defendant was in fact driving, became unavailable as a result of the denial of access.

However, at the very least, a defendant must show that "lost evidence or testimony would have been helpful to his defense, that the evidence would have been significant, and that the evidence or testimony was lost" as a result of the statutory deprivations of which he complains. *State v. Dietz*, 289 N.C. 488, 493, 223 S.E. 2d 357, 360 (1976) (discussing what constitutes prejudice in preindictment delay cases). Therefore, we hold that application of a *per se* prejudice rule as set forth in *Hill* is inappropriate in cases involving a violation of N.C.G.S. § 20-138.1(a)(2), driving with an alcohol concentration of 0.10 or more.

[3] In the case before us, defendant's blood alcohol level was 0.30 — substantially in excess of 0.10. Therefore, the result of the chemical analysis alone constitutes evidence sufficient to convict defendant. N.C.G.S. § 20-138.1(a)(2) (1983). From the findings of fact, it is obvious that the court below applied the *Hill* test to determine whether defendant's rights were prejudiced. Nothing in the record supports the trial court's findings that would clearly indicate what, if any, evidence bearing on the issue of guilt or innocence was lost.

Such findings are, therefore, inadequate to support the dismissal of the charge in this case.

[4] Of particular significance in this case is the finding of fact that defendant had asked the arresting officer to allow him to take the intoxilyzer test again. Defendant's second affidavit, introduced into evidence at the hearing, states that after blowing a 0.30 on the first test Knoll asked the arresting officer, "May I please take this test again?" The officer, according to the defendant's affidavit, said "No."

It is unclear from the evidence whether defendant was asking to retake the State administered test or to be allowed to take a second independent test. The "Affidavit and Revocation Report of Chemical Analyst" states that defendant was informed "orally" and "in writing" of his rights pursuant to N.C.G.S. § 20-16.2(a). That statute requires in part that the defendant "may have a qualified person of his own choosing administer a chemical test or

tests in addition to any test administered at the direction of the charging officer."

The uncontradicted evidence then, is that defendant was advised orally and in writing of his right to obtain a second test. It is unclear whether the officer's refusal to permit defendant "to take this test again" was a permissible denial of a request to have the State administer a second test or a denial of defendant's statutory right to have an independent test made. As pointed out in *State v. Fuller*, 24 N.C. App. 38, 209 S.E. 2d 805 (1974), "[s]hould it be established that defendant was advised of his right to have another test, and he failed to obtain one or was unable to obtain one, G.S. 20-139.1(d) provides that the admissibility in evidence of the results of the test administered is not precluded." 24 N.C. App. at 42, 209 S.E. 2d at 808.

"The failure of the State to establish that defendant was accorded this statutory right, in addition to the others which he was properly accorded, rendered the results of the breathalyzer test inadmissible in evidence." *Id.* at 42, 209 S.E. 2d at 808.

The evidence in the present case is inconclusive on this point and, therefore, inadequate to support the trial court's finding of fact that defendant was prejudiced as a result.

This case is reversed and remanded for trial. The superior court shall enter an order remanding this case to the district court for further proceedings in accordance with this opinion.

Reversed and remanded for trial.

Chief Judge HEDRICK and Judge ARNOLD concur.